# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION – CINCINNATI

| | |
|---|---|
| DAVID R. O'BANION, *et al.*, | Case No. 1:19-cv-841 |
| Plaintiffs, | Judge Matthew W. McFarland |
| v. | |
| AMERICAN AGGREGATES CORP., | |
| Defendant. | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TERMINATING ACTION

This matter is before the Court on the parties' cross motions for summary judgment, which are fully briefed and ripe for review. (*See* Docs. 12, 17, 24, 28, 29, & 30.) For the reasons below, Plaintiffs David R. O'Banion and O'Banion Farms, LLC's motion for summary judgment (Doc. 12) is **DENIED** and Defendant American Aggregates Corporation's motion for summary judgment (Doc. 28) is **GRANTED**.

### FACTS

**A. The Deed, the Reservation, and the Ohio Farmland Preservation Programs**

Plaintiff David R. O'Banion and Plaintiff O'Banion Farms, LLC (collectively, "O'Banion"), own 212 acres in Waynesville, Ohio in Warren County ("the Land"). O'Banion and his mother purchased the Land from Ernst Aggregates, Inc., predecessor in interest of Defendant American Aggregates Corporation, in 1989. The deed for the

purchase of the Land ("the Deed") contains the following reservation ("the Reservation"):

> GRANTOR HEREIN RESERVES ALL MINERAL RIGHTS NOT TO INCLUDE OIL AND GAS BUT DOES NOT RESERVE A RIGHT OF ACCESS. THIS RESERVATION SHALL RUN WITH THE LAND AND IS BINDING UPON THE GRANTEE, ITS SUCCESSORS AND ASSIGNS.

The parties negotiated the inclusion of the Reservation in the deed for purchase of the Land. O'Banion "was well aware [the Reservation] was going to be in the deed and had no objections as his only intentions were (and still are) to use the land as a farm for the rest of his life." (Doc. 12 at PageID# 74.) The Land has been used solely as farmland since O'Banion took ownership of the property.

O'Banion had not thought about the Reservation until he applied for certain Ohio Farmland Preservation programs in or around 2015. "These programs are administered by the Ohio State Department of Agriculture [] in conjunction with local governments, conservations districts, private non-profit entities, and others for the purposes of preserving Ohio farms." (*Id.* at PageID# 75.) Essentially, farmers either sell or donate an agricultural easement to the Ohio Department of Agriculture, promising to use the land solely for agricultural purposes. While one program is more lucrative than the other, both programs offer financial benefits to the farmers who apply and are accepted into either program. In addition to other requirements, "[t]he farmland owner must have possession of clear title to the applicant property" to be eligible to participate

2

in either program.[1] O'Banion made it through a majority of the application process in 2016 and 2017. The Ohio Department of Agriculture determined, however, that the Reservation prevented O'Banion from having clear title to the Land. Consequently, he was precluded from participating in the Ohio Farmland Preservation programs. O'Banion brought this action to remove or invalidate the Reservation so that he would be eligible to participate in those programs.

### B. The Complaint

O'Banion asserts five claims against American Aggregates Corporation: (1) monopoly and restraint on trade in violation of the Valentine Act, Ohio Rev. Code § 1331.01 et seq., (2) declaratory judgment that the Reservation is moot; (3) slander of title; (4) quiet title; and (5) declaratory judgment that the Reservation is void as against public policy. O'Banion moves for summary judgment on the first, second, and fifth claims, while Defendant moves for summary judgment on all claims.

### LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. Fed. R. Civ. P. 56(a). The burden is on the moving party to show that no genuine issue of material

---

[1] *Agricultural Donation Easement Program*, Ohio Department of Agriculture, Farmland Preservation Office, https://agri.ohio.gov/wps/portal/gov/oda/programs/farmland-preservation-office/resources/resource-agricultural-easement-donation-program (last visited Apr. 21, 2021); *Clean Ohio Local Agricultural Easement Purchase Program*, Ohio Department of Agriculture, Farmland Preservation Office, https://agri.ohio.gov/wps/portal/gov/oda/programs/farmland-preservation-office/resources/resource-clean-ohio-local-agricultural-easement-purchase-program-laepp (last visited Apr. 21, 2021).

3

fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets its burden, then it becomes the nonmoving party's responsibility to point out specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This Court is under no obligation to plumb the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). A "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element upon which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

When parties file cross-motions for summary judgment, the standard remains the same. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). Resolving such cross-motions requires the Court to analyze each motion on its own merits, drawing all reasonable inferences against the party whose motion is under review. *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019).

# ANALYSIS

After reviewing the parties' memoranda, the most efficient approach to ruling upon their respective motions is to evaluate O'Banion's claims individually. The Court does so below.

### A. <u>Violation of Ohio's Antitrust Laws (Count One)</u>

O'Banion brings his antitrust claim under Ohio's Valentine Act, Ohio Rev. Code § 1331.01 et seq. Defendant argues that the claim is barred by the statute of limitations, which provides that any civil action for a violation of the Valentine Act must be brought within four years of when the cause of action accrued. *See* O.R.C. § 1331.12(B). Here, the alleged antitrust violation accrued when the Deed was conveyed to O'Banion over thirty years ago. O'Banion has no response to this argument. Defendant is therefore entitled to summary judgment on this claim.

### B. <u>Declaratory Judgment on Mootness Grounds (Count Two)</u>

O'Banion's first claim for declaratory judgment is premised on the proposition that the Reservation is meaningless without a right of access to remove the minerals from the Land. It is well-settled Ohio law that courts must follow the plain language of the Deed and give effect to the intention of the parties, as expressed within the four corners of the document. *Koprivec v. Rails-to-Trails of Wayne Cty.*, 153 Ohio St.3d 137, 2018-Ohio-465, ¶ 29, citing *Hinman v. Barnes*, 146 Ohio St. 497, 508, 66 N.E.2d 911 (1946). The Deed in this case is clear as a bell—the grantor reserves all mineral rights, not to include oil and gas, but does not reserve a right of access.

O'Banion does not cite any compelling authority for the argument that the failure to reserve a right of access renders Defendant's reservation of mineral rights moot. As noted in the caselaw cited by the parties, the Deed functions in the same manner as a contract. The parties to that contract may agree upon the sale of whatever property rights they choose. Here, it is reasonable to surmise that the selling price for the Land reflected Defendant's reservation of the mineral rights. And, contrary to O'Banion's assertions, the Reservation is not meaningless. If, in the future, O'Banion discovers minerals on the Land and the law permits their extraction, he could sell Defendant a limited right of access to mine them. The cost of such access would be subject to negotiation and whether they could reach an agreement is uncertain. That uncertainty, however, does not make the Reservation moot. Accordingly, Defendant is entitled to summary judgment on O'Banion's first declaratory judgment claim.

### C. Slander of Title (Count Three)

Slander of title is "a tort action which may be brought against any one [sic] who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss." *Wiley v. Triad Hunter LLC*, S.D. Ohio No. 2:12-CV-00605, 2013 U.S. Dist. LEXIS 112066, *13 (citation omitted). To establish a slander of title claim, the plaintiff must prove that: "(1) there was a publication of a slanderous statement disparaging [the] claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard for its falsity; and (4) the statement caused actual or special damages." *Id.*,

quoting *McClure v. Fischer Attached Homes*, 145 Ohio Misc.2d 38, 48-49 (Clermont Co. C.P. 2007).

Defendant accurately points out that O'Banion has not identified any malicious or recklessly made false statement about his title to the Land. Moreover, if O'Banion contends his title to the mineral rights has been slandered, he does not have title to those rights. Without title to the mineral rights, he cannot bring a claim for slander of that title. O'Banion does not address these deficiencies or otherwise attempt to shore up this claim in his response. The Court thus grants summary judgment for Defendant on the slander of title claim.

### D. Quiet Title (Count Four)

Quiet title is an Ohio statutory proceeding set forth in Ohio Rev. Code § 5303.01. Under Ohio law, a plaintiff seeking to quiet title to property must "prov[e] title in himself if the defendant's answer denies his title or asserts title adversely." *Kallas v. Ohio Water Serv. Co.*, 132 Ohio App.3d 421, 425, 725 N.E.2d 324 (7th Dist.1999). In *Kallas*, the court held that the appellants could not quiet title to the property at issue because they "admit[ted] that their 1949 deed contained language stating that their property was 'subject to all legal highways.'" *Id.* at 426. The appellants therefore had notice of the adverse interest and nevertheless took the property "subject to the interest described by deed." *Id.*; *see also Biszczanik v. Nationstar Mortg., LLC*, 6th Cir. No. 17-1930, 2018 U.S. App. LEXIS 7953, ¶ 11 (holding that plaintiff could not quiet title to the property at issue because he failed to make "a prima facie case that he had superior title

or right to the property," and instead tried to "rely * * *on the [supposed] weakness of [the] defendant's title.") (citation omitted).

Defendant argues that what happened in *Kallas* is analogous to what has happened in this case. The Court agrees. O'Banion does not have title to the mineral rights and has never claimed to have such title. As there is no factual basis for a quiet title claim, the Court will grant Defendant's motion for summary judgment as to that claim.

### D. **Declaratory Judgment – Violation of Public Policy (Count Five)**

O'Banion's second declaratory judgment claim is based on the contention that the Reservation is void because it violates public policy. Specifically, it precludes O'Banion from participating in Ohio Farmland Preservation programs, which implement public policy in favor of preserving Ohio farmland in perpetuity.

As noted in Defendant's memorandum, courts "accord great deference to the validity of contracts into which the parties have entered freely." *Drillers Place, Ltd. v. Mormack Indus.*, 9th Dist. Wayne No. 13CA0056, 2016-Ohio-167, ¶ 19 (citation omitted). The public policy exception to parties' freedom to contract is implicated only when "there is an injurious impact on public morals, public health, public safety, and public welfare." *Id*. Thus, only contracts that "bring about results which the law seeks to prevent" are unenforceable as against public policy. *Id*.

O'Banion argues that, because the Ohio Department of Agriculture's programs disallow farms without clear title from participating, the Reservation violates public policy and is therefore void. The Reservation, however, does not prohibit O'Banion

8

from using the land for agricultural purposes, nor has it. As O'Banion states, "[t]he land has been used solely for crop production and animal husbandry from the purchase to the current date[,"] and he "intends to operate the farm for crops and livestock as long as he is able." (Doc. 12 at PageID# 74.) Thus, the Reservation does not interfere with the policy underlying the preservation programs. Instead, it prevents O'Banion from reaping certain benefits the state has offered to promote that policy.

Additionally, as Defendant further notes, the Ohio legislature has enacted a statutory scheme that expressly allows for the preservation of mineral interests held by a party other than the landowner. *See* O.R.C. § 5301.56. Because the legislative branch is the arbiter of public policy, the creation of a statute that allows for the severance of mineral interests, including minerals such as gravel, to be preserved demonstrates that such severance is generally consistent with public policy. Accordingly, Defendant is also entitled to summary judgment on O'Banion's final declaratory judgment claim as a matter of law.

## CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiffs' motion for summary judgment. This action shall be **TERMINATED** on the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND